**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------

SHIVA STEIN,                                         :
                                                     :
          Plaintiff,                          :   Civil Action No. 22-cv-8048
                                                     :
v.                                                   :   **COMPLAINT FOR VIOLATIONS OF**
                                                     :   **SECTIONS 14(a) AND 20(a) OF THE**
SIGNIFY HEALTH, INC., MATTHEW S.                     :   **SECURITIES EXCHANGE ACT OF**
HOLT, KYLE ARMBRESTER, TAJ J.                        :   **1934**
CLAYTON, HEATHER DIXON, CPA,                         :
ARNOLD GOLDBERG, BRANDON H.                          :   **JURY TRIAL DEMANDED**
HULL, KEVIN M. MCNAMARA, ALBERT                      :
A. NOTINI, KYLE B. PETERSON, and                     :
VIVIAN E. RIEFBERG,                                  :
                                                     :
          Defendants.                         :
---------------------------------------------------------  :

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.      This is an action brought by Plaintiff against Signify Health, Inc. ("Signify Health or the "Company") and the members Signify Health's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Signify Health by affiliates of CVS Pharmacy, Inc. ("CVS").

2.      Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Definitive Proxy Statement on Schedule 14A (the

"Proxy Statement") to be filed on September 19, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.   The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby the Noah Merger Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of CVS, will merge with and into Signify Health with Signify Health surviving as a wholly-owned subsidiary of CVS (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on September 2, 2022 (the "Merger Agreement"), each Signify Health stockholder will receive $30.50 in cash (the "Merger Consideration") for each Signify Health share owned.

3.      As discussed below, Defendants have asked Signify Health's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisors, Goldman Sachs & Co. LLC ("Goldman Sachs") and Deutsche Bank Securities, Inc. ("Deutsche Bank) in support of their fairness opinions.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Signify Health's stockholders or, in the event

2

the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Company's stock trades on the New York Stock Exchange, headquartered in this District, and because the Company's proxy solicitor, MacKenzie Partners, Inc., is also headquartered in this District. Lastly, the closing of the Proposed Transaction will take place at the offices of Ropes & Gray LLP, located in this District..

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Signify Health stocks and has held such stocks since prior to the wrongs complained of herein.

10.     Individual Defendant Matthew S. Holt has served as a member of the Board since December 2017 and is the Chairman of the Board.

11.     Individual Defendant Kyle Armbrester has served as a member of the Board since April 2018 and is the Company's Chief Executive Officer.

12.     Individual Defendant Taj J. Clayton has served as a member of the Board since July 2020.

13.     Individual Defendant Heather Dixon has served as a member of the Board since April 2021.

14.     Individual Defendant Arnold Goldberg has served as a member of the Board since August 2021.

15.      Individual Defendant Brandon H. Hull has served as a member of the Board since April 2018.

16.     Individual Defendant Kevin M. McNamara has served as a member of the Board since April 2013.

17.     Individual Defendant Albert A. Notini has served as a member of the Board since December 2017.

18.     Individual Defendant Kyle B. Peterson has served as a member of the Board since December 2017.

19.     Individual Defendant Vivian E. Riefberg has served as a member of the Board since February 2020.

20.     Defendant Signify Health is a Delaware corporation and maintains its principal offices at 4055 Valley View Lane, Suite 700, Dallas, TX 75244. The Company's stock trades on the New York Stock Exchange under the symbol "SGFY."

21.     The defendants identified in paragraphs 10-19 are collectively referred to as the "Individual Defendants" or the "Board."

22.     The defendants identified in paragraphs 10-20 are collectively referred to as the "Defendants."

4

**SUBSTANTIVE ALLEGATIONS**

A.      **The Proposed Transaction**

23.      Signify Health operates a healthcare platform that utilizes analytics, technology, and healthcare provider networks in the United States. The Company operates through Home & Community Services and Episodes of Care Services segments. The Home & Community Services segment offers health evaluations performed within the patient's home or at a healthcare provider facility primarily to Medicare Advantage health plans; diagnostic screening and other ancillary services; and services to address healthcare concerns related to social determinants of health. The Episodes of Care Services segment provides services to enhance the healthcare delivery through developing and managing episodic payment programs in partnership with healthcare providers under the Bundled Payment for Care Improvement Advanced program with Centers for Medicare and Medicaid Services; and care management services. The Company serves health plans, governments, employers, health systems, and physician groups. The Company operates in Norwalk, Connecticut, New York, New York, Dallas, Texas, South Dakota, Deerfield, Florida, and Rapid City. Signify Health was founded in 2017 and is headquartered in Dallas, Texas.

24.      On September 5, 2022, the Company and CVS jointly announced the Proposed Transaction:

> WOONSOCKET,  R.I., DALLAS and NEW   YORK, Sept.  5,
> 2022 /PRNewswire/ -- CVS Health (NYSE: CVS) and Signify
> Health (NYSE: SGFY) ("Signify") have entered into a definitive
> agreement under which CVS Health will acquire Signify Health
> for $30.50 per share in cash, representing a total transaction value
> of approximately $8 billion.
>
> Signify Health is a leader in Health Risk Assessments, value-based
> care and provider enablement. With a network of more than 10,000
> clinicians across all 50 states and a nationwide value-based provider
> network, combined with its proprietary analytics and technology
> platforms, Signify Health is improving patient engagement, patient
> outcomes and care coordination for stakeholders across the health

care system. Signify Health's clinicians and providers can have an even greater impact by engaging with CVS Health's unique collection of assets and connecting patients to care how and when they need it.

"Signify Health will play a critical role in advancing our health care services strategy and gives us a platform to accelerate our growth in value-based care," said CVS Health President and CEO, Karen S. Lynch. "This acquisition will enhance our connection to consumers in the home and enables providers to better address patient needs as we execute our vision to redefine the health care experience. In addition, this combination will strengthen our ability to expand and develop new product offerings in a multi-payor approach."

Signify Health's network of clinicians physicians, nurse practitioners and physician assistants utilize home-based visits to identify a patient's clinical and social needs, and then connect them to appropriate follow-up care and community-based resources in order for the patient to have a more connected, effective care experience. In 2022, Signify Health's clinicians expect to connect with nearly 2.5 million unique members in the home, both in-person and virtually, and on average they spend 2.5 times longer with a patient in the home than providers spend in the average primary care office visit.

Notably, since acquiring Caravan Health in March 2022, Signify Health has further expanded its focus on value-based care and population health. Today, Caravan is already a partner to over 170 providers participating in accountable care organizations (ACOs) serving Medicare beneficiaries with a focus on improving the health of underserved communities. Signify Health recently announced that its ACOs generated more than $138 million in gross savings in 2021, and in 2023 the Caravan business is expected to serve ACOs representing over 700,000 people rivaling many standalone platforms. As part of CVS Health, Signify Health will continue to advance its extensive primary care enablement capabilities, including turnkey analytics, network, and practice improvement solutions, to help providers transition to value-based reimbursement and improve quality of care.

"Signify Health's mission is to build trusted relationships to make people healthier by using actionable intelligence to understand what's really impacting outcomes and cost today," said Kyle Armbrester, CEO of Signify Health. "As we carefully considered our long-term strategic options, we determined that CVS Health is the ideal partner, given its focus on expanding access to health

services and helping consumers navigate to the best sites of care. We are both building an integrated experience that supports a more proactive, preventive and holistic approach to patient care, and I look forward to executing on our shared vision for the future of care delivery."

"We formed Signify Health and recruited Kyle and the team to build a strategic innovation platform focused on leveraging technology as a catalyst for connecting key health care stakeholders to drive better patient outcomes," said Matt Holt, Chairman of the Board, Signify Health and President of Private Equity and Managing Director at New Mountain Capital, which owns a majority stake in Signify Health. "Together with CVS Health, Signify is uniquely positioned to continue to lead the transformation to value-based care. We look forward to the significant impact this transaction will make on health care for years to come."

Following the close of the transaction, Kyle Armbrester will continue to lead Signify Health as part of CVS Health. Signify Health's extensive network of over 50 health plan clients and their members will further augment CVS Health's longstanding and leading offering of payor-agnostic solutions for a diverse set of health plan and employer clients.

**Transaction details**

CVS Health will acquire Signify Health's stock for $30.50 per share. CVS Health expects to fund the transaction with existing cash from its balance sheet and available resources and is committed to maintaining its current credit ratings. The transaction was approved by the Board of Directors at each of the respective companies. It is subject to approval by a majority of Signify Health's stockholders, receipt of regulatory approval and satisfaction of other customary closing conditions. Private equity funds affiliated with New Mountain Capital, which owns approximately 60% of the common stock of Signify Health, have agreed to vote the shares they own in favor of the transaction, subject to customary exceptions. CVS Health and Signify Health anticipate that the transaction will close in the first half of 2023.

"This is a major step as we continue to execute on our strategy," said CVS Health Executive Vice President and Chief Financial Officer Shawn Guertin. "We expect the acquisition to be meaningfully accretive to earnings and, as a result, are increasingly confident we can achieve our long-term adjusted EPS goals as outlined at our Investor Day in December 2021."

\* \* \*

**Advisors**

BofA Securities is serving as financial advisor to CVS Health. CVS Health was advised on legal matters by Fried, Frank, Harris, Shriver & Jacobson LLP, Dechert LLP, and McDermott Will & Emery LLP. Goldman Sachs & Co. LLC and Deutsche Bank Securities Inc. are serving as financial advisors to Signify Health. Ropes & Gray LLP is acting as Signify Health's legal advisor.

\* \* \*

25.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that Signify Health's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

26.     On September 19, 2022, Signify Health filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

27.     The Proxy Statement fails to provide material information concerning financial projections by Signify Health management and relied upon by Goldman Sachs and Deutsche Bank

in their analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board, Goldman Sachs, and Deutsche Bank with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Signify Health management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

28.     For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted Gross Profit, Adjusted EBITDA, and Unlevered Free Cash Flow, but fails to provide line items used to calculate the metrics or a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). In the case of Unlevered Free Cash Flow, the Proxy Statement also fails to disclose the definition of or formula to calculate the metric

29.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable

method) of the differences between the non-GAAP financial measure disclosed or released with

the most comparable financial measure or measures calculated and presented in accordance with

GAAP. 17 C.F.R. § 244.100.

30.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

31.     Thus, to cure the Proxy Statement and the materially misleading nature of the

forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement,

Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable

GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

32.     With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis*, the

Proxy Statement fails to disclose: (i) the range of illustrative terminal values for Signify Health;

(ii) the inputs and assumptions underlying the use of next twelve months terminal year multiples

of enterprise value to terminal year NTM Adjusted EVITDA ranging from 8.0x to 10.5x; (iii) the

inputs and assumptions underlying the use of the range discount rates of 9.5% to 11.5%; (iv) the

inputs and assumptions for the perpetuity growth rates ranging from 0.9% to 4.6%; (v) the amount

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

of Signify Health's total debt and debt-like items; (vi) the Company's unrestricted cash and cash equivalents as of June 30, 2022; (vii) the present value of the benefit of tax assets covered by the TRA net of the liabilities owed under the TRA discounted at Signify Health's WACC; and (viii) the number of fully diluted outstanding shares of Signify Health.

33.     With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) the basis for applying a range of NTM EV/EBITDA multiples of 15.5x to 17.5x to NTM Adjusted EBITDA estimates; (ii) the Company's total debt and debt-like items and unrestricted cash and cash equivalents; (iii) the present value of the benefit of tax assets covered by the TRA net of the liabilities owed under the TRA discounted at Signify Health's WACC, as of December 31, 2022, 2023, and 2024; (iv) the number of fully diluted outstanding Company stock as of December 31, 2022; and (v) the basis for applying the illustrative discount rate of 11.3%.

34.     With respect to Goldman Sachs' *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose the financial metrics for each transaction selected for the analysis.

35.     With respect to Goldman Sachs' *Premia Analysis*, the Proxy Statement fails to disclose: (i) the transactions reviewed and analyzed by Goldman Sachs; and (ii) the premia paid in those selected transactions.

36.     With respect to Goldman Sachs' *Selected Public Company Comparables* analysis, the Proxy Statement fails to disclose the financial metrics for each company selected for the analysis.

37.     With respect to Deutsche Bank's *Analysis of Selected Publicly Traded Companies*, the Proxy Statement fails to disclose the financial metrics for each company selected for the analysis.

38.     With respect to Deutsche Bank's *Analysis of Selected Precedent Transactions*, the Proxy Statement fails to disclose the financial metrics for each transaction selected for the analysis.

39.     With respect to Deutsche Bank's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the estimated terminal values for Signify Health; (ii) the inputs and assumptions underlying the use of the range discount rates of 9.6% to 10.7%; (iii) the inputs and assumptions for the perpetuity growth rates ranging from 2.5% to 3.5%.

40.     With respect to Deutsche Bank's *Wall Street Analysis Estimates*, the Proxy Statement fails to disclose: (i) the research analysts' observed; and (ii) the stock price targets published by those research analysts.

41.     With respect to Deutsche Bank's *Premia Paid Analysis*, the Proxy Statement fails to disclose: (i) the transactions selected and reviewed; and (ii) the premia paid in those selected transactions.

42.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

43.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

45.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

46.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

47.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do

13

carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

48.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

49.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50.     The Individual Defendants acted as controlling persons of Signify Health within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Signify Health, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Signify Health, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

51.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Signify Health, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

53.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

54.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

56.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: September 19, 2022                           **MELWANI & CHAN LLP**

                                        By:  */s/ Gloria Kui Melwani*
                                              Gloria Kui Melwani (GM5661)
                                              1180 Avenue of the Americas, 8th Fl.
                                              New York, NY 10036
                                              Telephone: (212) 382-4620
                                              Email: gloria@melwanichan.com

                                              *Attorneys for Plaintiff*

16